IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **THE FINANCIAL TIMES LIMITED,**<br><br>    Plaintiff,<br><br>    v.<br><br>**GMERC LLC d/b/a FINTANK,**<br><br>    Defendant. | Case No. _____<br><br>*JURY TRIAL DEMANDED*<br><br>*ELECTRONICALLY FILED* |

## COMPLAINT

Plaintiff The Financial Times Limited ("Plaintiff" or "Financial Times") files this Complaint against Defendant GMERC LLC d/b/a FinTank ("Defendant" or "FinTank") seeking damages and injunctive relief.

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1338 because the Complaint asserts claims that arise under the laws of the United States.

2. Venue lies in this Court because a substantial part of the acts and/or omissions giving rise to the claims occurred in this District.

## THE PARTIES

3. Plaintiff The Financial Times Limited is a limited company organized under the laws of the United Kingdom and having its principal place of business at Bracken House, 1 Friday Street London, United Kingdom EC4M9BT. Plaintiff conducts business throughout the United States.

1

4. Upon information and belief, Defendant GMERC LLC d/b/a FinTank is a limited liability company organized and existing under the laws of Illinois and having its principal place of business at 333 S. Wabash Avenue, Suite 2700, Chicago, Illinois 60604, United States of America.

## FACTUAL BACKGROUND

*Plaintiff The Financial Times Limited's Business and Trademarks*

5. Plaintiff The Financial Times Limited is one of the world's leading news organizations, and is recognized internationally for its authority, integrity and accuracy. It publishes a famous, salmon-colored newspaper – both in print and online – for the business and finance communities, providing the latest financial news, commentary, data, and analysis on all business and finance-related topics, such as macro policy intelligence, fund management information, recruitment services, and specialist information on retail, personal, and institutional finance.

6. Plaintiff has offered FT-branded live conferences and education events in the United States since at least as early as January 18, 2012, and hosts over 200 events globally per year under the FT mark, from breakfast briefings to two-day conferences on topics including business, finance, economics, education, politics, and current affairs. Plaintiff has arranged and hosted at least 40 FT-branded events in the United States over the past three years. Plaintiff derives considerable revenue from these sponsored events. A list of past and upcoming FT live events is available at https://live.ft.com/Past-events/, and true and accurate copies of this webpage are collectively attached hereto as Exhibit A.

7. Plaintiff has run the following events in Chicago, Illinois under the FT brand since 2013: (a) Financial Services and the Digital Consumer; (b) Integrating Risk and Finance to

Meet the New Regulatory Expectations; (c) Creating Value from Data; (d) FT Future of Manufacturing Summit; (e) Transforming Pharma R&D with AI and Big Data; (f) Unlocking Digital Growth; and (g) FT-PTC Future of Industrial Innovation Global Series. Details about some of these past events in Chicago, Illinois are available at https://na.eventscloud.com/ehome/56311?_ga=2.8895733.1380362728.1591788682-405484895.1591552588, https://live.ft.com/Events/Integrating-Risk-and-Finance-to-Meet-the-New-Regulatory-Expectations, https://live.ft.com/Events/Creating-Value-from-Data7, https://live.ft.com/Events/2018/FT-Future-of-Manufacturing-Summit-USA, https://live.ft.com/Events/2019/Transforming-Pharma-R-D-with-AI-and-Big-Data2, https://live.ft.com/Events/Unlocking-Digital-Growth3, and https://live.ft.com/Events/2019/FT-PTC-Future-of-Industrial-Innovation-Global-Series-Chicago. True and accurate copies of these webpages are collectively attached hereto as Exhibit B.

8. Plaintiff has also run an annual US Banking Summit in New York in 2017, 2018 and 2019, and financial technology, also known as fintech, is frequently a topic on the meeting agendas. Details about these New York events, including the meeting agendas, are available at https://live.ft.com/Events/2017/FT-US-Banking-Forum-2017, https://live.ft.com/Events/2018/FT-US-Banking-Forum-2018, and https://live.ft.com/Events/2019/FT-US-Banking-Forum-2019. True and accurate copies of these webpages are collectively attached hereto as Exhibit C.

9. Plaintiff also launched the annual FT Fintech Awards in 2016. The 2017 Awards FAQ, available at https://www.ft.com/content/d19d6186-2432-11e7-a34a-538b4cb30025, explained that entrants from all countries, including the United States, were eligible to enter, and the 2017 list of ten shortlisted entrants, available at https://www.ft.com/content/268c9668-af56-

3

11e7-aab9-abaa44b1e130, included three United States fintech businesses. True and accurate copies of these FT Fintech Awards webpages are collectively attached hereto as Exhibit D.

10. Since at least as early as September 2016, Plaintiff has published a "Future of Fintech" special report on its FT.com website available at https://www.ft.com/reports/future-of-fintech, reporting on the convergence of finance and technology for its customers. True and accurate copies of these webpages are collectively attached hereto as Exhibit E.

11. Plaintiff uses the trademarks FT and FT LIVE in the United States in connection with the following services, among many other goods and services: arranging, planning, providing, and conducting educational conferences, webinars, lectures, meetings, seminars and workshops relating to business, business services, finance, financial services, economics, politics, current affairs, biotechnology, pharmaceutical, energy, luxury goods, media and commodities issues; providing online information about education via the internet or via other communication networks; publication services, namely, publishing of newspapers, periodicals, catalogues, magazines, journals, brochures, financial reports, and educational materials, all in the fields of business, business services, finance, financial services, economics, politics and current affairs; providing online non-downloadable electronic publications in the nature of newspapers, periodicals, catalogues, magazines, journals, blogs, brochures, financial reports, and educational materials in the fields of business, business services, finance, financial services, economics, politics and current affairs; entertainment services, namely, providing non-downloadable podcasts and vodcasts in the fields of business, business services, finance, financial services, economics, politics and current affairs; provision of business and financial news online; providing statistical business information; advertising agency services; preparation and quotation

of information concerning stock exchange prices and indices, and exchange rates; providing business information.

12. Plaintiff owns numerous United States federal trademark and service mark registrations, including the following:

a) FT, Reg. No. 1785461, filed on April 23, 1990 and registered on August 3, 1993, for goods and services in International Classes 16, 35, 36, and 41;

b) FT, Reg. No. 3707518, filed on July 24, 2008 and registered on November 10, 2009, for goods and services in International Classes 36, 38, and 41;

c) FT, Reg. No. 5056818, filed on December 24, 2014 and registered on October 11, 2016, for goods and services in International Classes 9, 16, 36, 38, and 41;

d) FT LIVE, Reg. No. 5766268, filed on May 8, 2017 and registered on June 4, 2019, for goods and services in International Classes 9, 16, 35, 36, 38, and 41;

e) **FT Specialist**, Reg. No. 5952206, filed on and registered on January 7, 2020, for goods and services in International Classes 9, 16, 36, 38, and 41;

f) FT PUBLISHING, Reg. No. 4460261, filed on June 14, 2011 and registered on December 31, 2013, for goods and services in International Classes 16 and 41;

g) FT PUBLISHING, Reg. No. 4490119, filed on June 14, 2011 and registered on March 4, 2014, for goods and services in International Classes 16, 35, and 41;

h) FT AVERAGE DAILY GLOBAL AUDIENCE, Reg. No. 4152602, filed on January 5, 2011 and registered on June 5, 2012, for goods and services in International Classes 35 and 38; and

5

i) , Reg. No. 5304077, filed on February 11, 2014 and registered on October 7, 2017, for goods and services in International Classes 9, 16, 38, and 41

(collectively the "FT Marks"). True and accurate copies of these trademark registrations and printouts of the relevant printouts from the USPTO TSDR database are attached hereto as collective Exhibit F.

13. Plaintiff has expended substantial time, effort, and expense to develop and protect the value of the FT Marks.

14. The FT Marks, taken as a whole, are famous, distinctive, and recognized by consumers as source identifiers for Plaintiff's publications, live events and education services, and other goods and services. Plaintiff derives substantial goodwill from its use of the FT Marks.

*Defendant GMERC LLC d/b/a FinTank's Business and Unlawful Conduct*

15. Defendant GMERC LLC d/b/a FinTank ("Defendant" or "FinTank") provides the following services in the United States under the unregistered marks  and  (collectively, the "FinTank Marks"): business networking; business development services, namely, providing start-up support for businesses of others; incubation services, namely, providing work space to start-ups and existing businesses; business support services, namely, business consulting to start-ups and existing businesses; on-line business networking

6

services; organizing business networking events in the field of financial technology and cybersecurity; educational services, namely, developing, arranging, and conducting educational conferences, seminars, programs, panels, forums, and presentations in the field of financial technology, business networking, and cybersecurity; education services, namely, providing mentorship programs in the fields of financial technology and cybersecurity; electronic publications, namely, blog concerning financial technology, business networking, and cybersecurity.

16. Without Plaintiff's authorization or consent, Defendant offers its services using the unregistered FinTank Marks. Defendant's display of "FT" in the FinTank Marks is confusingly similar to Plaintiff's FT Marks.

17. Defendant offers its services using the unregistered FinTank Marks online, including on the following webpages: (a) GMERC's website (https://www.fintank.org/); and (b) GMERC's EventBrite webpage (https://www.eventbrite.com/o/fintank-12848755073). True and accurate copies of these webpages are collectively attached hereto as Exhibit G.

18. On August 22, 2018, Defendant filed a United States trademark application for the  mark (U.S. Application Serial No. 88/088,765).

19. By letter dated February 12, 2019, counsel for Plaintiff informed Defendant of Plaintiff's prior rights in the FT Marks, requested the express abandonment of U.S. Application Serial No. 88/088,765 and demanded that Defendant cease use of the FinTank Marks and any other marks that are confusingly similar to (or premised in whole or in part upon) "FT". A true and accurate copy of Plaintiff's February 12, 2019 letter is attached hereto as Exhibit H. Notably,

7

Plaintiff did not object to Defendant's continued use of the "FinTank" portion of the mark, so long as Defendant ceased the use of the wording "FT". *Id.*

20. In response, on February 26, 2019, Defendant expressly abandoned U.S. Application Serial No. 88/088,765 for the  **FinTank** mark.

21. Defendant, however, failed to stop using the FinTank Marks in connection with its services. Specifically, the  **FinTank** mark still appears on Defendant's webpages and Defendant displays the  mark on its social media pages (*see* Exhibit I) and in its email headers (*see* Exhibit J).

22. By an email dated May 4, 2020, Defendant informed Plaintiff that it was unwilling to cease use of the FinTank Marks in connection with Defendant's services. Defendant also mentioned that it was pursuing a partnership with *The Economist*, one of Plaintiff's direct competitors in the printed publications, conference, and educational and networking services fields. Such a partnership is particularly concerning to Plaintiff because doing so would further dilute Plaintiff's valuable FT Marks. A true and accurate copy of counsel for Defendant's May 4, 2020 email to Plaintiff is attached hereto as Exhibit K.

23. Defendant's unauthorized and unlawful use of the FinTank Marks is confusingly similar to Plaintiff's FT Marks, and is likely to cause confusion in the minds of consumers.

24. Given the confusing similarity of the parties' marks, reasonable consumers are likely to mistakenly believe that Defendant's business and services are sponsored, authorized, or

8

approved by Plaintiff, or are otherwise associated with the company that offers news and educational and live events services under the FT Marks.

25. Defendant's unauthorized and unlawful conduct constitutes federal trademark infringement and unfair competition, and is causing Plaintiff to suffer irreparable injuries for which it has no adequate remedy at law.

## COUNT I
### (FEDERAL TRADEMARK INFRINGEMENT, 15 U.S.C. § 1114(1)(a))

26. Plaintiff incorporates the allegations of ¶¶ 1 – 25 by reference as if fully set forth herein.

27. Defendant, with knowledge of Plaintiff's ownership of the federally registered FT Marks, continues to use the FinTank Marks in the offer and sale of its services.

28. Defendant's use in commerce of the FinTank Marks is confusingly similar to the FT Marks. It is likely to cause confusion, to cause mistake or to deceive consumers regarding the source of the goods and services being offered.

29. Defendant's actions constitute infringement of Plaintiff's federally registered FT Marks in violation of 15 U.S.C. § 1114.

30. Defendant has full knowledge of Plaintiff's rights in and to the FT Marks, yet continues to use its confusingly similar FinTank Marks when offering its services. Defendant's continued use of the confusingly similar FinTank Marks is, therefore, intentional, willful, and meant to cause confusion, to cause mistake, or to deceive. As a result, Defendant should be held liable to Plaintiff for treble damages and attorneys' fees pursuant to 15 U.S.C. § 1117.

31. Upon information and belief, Defendant has wrongfully and unlawfully derived income and profits, and has been unjustly enriched by its acts.

32. By reason of Defendant's acts, Plaintiff has suffered and will continue to suffer damage and injury to its business, reputation and goodwill, and will sustain losses not yet calculated.

33. Unless enjoined, Defendant's acts will cause Plaintiff continuing irreparable harm for which there is no adequate remedy at law.

## COUNT II
### (FEDERAL TRADEMARK DILUTION, 15 U.S.C. § 1125(c))

34. Plaintiff incorporates the allegations of ¶¶ 1 – 33 by reference as if fully set forth herein.

35. Plaintiff's FT Marks are famous. Plaintiff has used the FT Marks in the United States for about three decades. Plaintiff has spent substantial resources over its long history to develop its goodwill, including strong name recognition and reputation for integrity and accuracy, which are vital to its success around the world. Plaintiff's FT Marks have acquired distinctiveness through, among other things, its continuous use in Illinois and throughout the United States for many years. As a result, the FT Marks have become famous. They are widely recognized by the general consuming public of the United States as a designation of source of Plaintiff's goods and services.

36. Plaintiff's FT Marks are distinctive and famous within the meaning of 15 U.S.C. § 1125(c) and became famous before Defendant began using the FinTank Marks in connection with its services.

37. Defendant's unauthorized, continued use of the FinTank Marks has caused, and continues to cause, dilution of the FT Marks by blurring and tarnishing the goodwill Plaintiff has developed in the FT Marks.

38. Defendant's unauthorized, continued use of the FinTank Marks also threatens the value of the Plaintiff's FT brand.

39. Defendant's unauthorized freeriding on Plaintiff's goodwill has and will continue to cause confusion among consumers.

40. By reason of Defendant's acts, Plaintiff has suffered and will continue to suffer damage and injury to its business, reputation, and goodwill, and will sustain losses not yet calculated.

41. Unless enjoined, Defendant's acts will cause Plaintiff continuing irreparable harm for which there is no adequate remedy at law.

## COUNT III
### (FEDERAL UNFAIR COMPETITION, 15 U.S.C. § 1125(a))

42. Plaintiff incorporates the allegations of ¶¶ 1 – 41 by reference as if fully set forth herein.

43. Defendant, with knowledge of Plaintiff's exclusive rights in and to the federally registered FT Marks, and intending to trade on the goodwill and reputation of Plaintiff in the marketplace, has adopted and used the FinTank Marks in the offer and sale of its services.

44. Defendant's unauthorized use in commerce of the FinTank Marks is confusingly similar to the federally registered FT Marks, and is likely to cause confusion or mistake, or to deceive consumers with respect to: (i) the affiliation, connection, or association of Plaintiff and Defendant; and (ii) the endorsement or approval by Plaintiff of Defendant's services.

45. Defendant's actions constitute unfair competition, false designation of origin, and false description in violation of 15 U.S.C. § 1125(a).

46. Upon information and belief, Defendant has wrongfully and unlawfully derived income and profits, and has been unjustly enriched by its acts.

47. By reason of Defendant's acts, Plaintiff has suffered and will continue to suffer damage and injury to its business, reputation and goodwill, and will sustain losses not yet calculated.

48. Unless enjoined, Defendant's acts will cause Plaintiff continuing irreparable harm for which there is no adequate remedy at law.

## COUNT IV
### (ILLINOIS COMMON LAW TRADEMARK INFRINGEMENT)

49. Plaintiff incorporates the allegations of ¶¶ 1 – 48 by reference as if fully set forth herein.

50. Plaintiff is the owner of valid common law rights in the FT Marks, which it has used continuously in connection with the distribution of its newspaper, well prior to Defendant's unauthorized use of the FinTank Marks.

51. With knowledge of Plaintiff's exclusive rights in the FT Marks, and intending to trade on Plaintiff's goodwill and reputation in the marketplace, Defendant has adopted, used, and continues to use the FinTank Marks with the intent of confusing consumers and trade. This is of particular concern where Defendant seeks to further dilute the FT Marks by using its infringing FinTank Marks in a partnership with *The Economist*, Plaintiff's direct competitor.

52. Defendant's use of the FinTank Marks is likely to cause consumer confusion to the detriment of Plaintiff. Defendant's use has caused and will continue to cause confusion, mistake or deception as to the sponsorship, affiliation or source of Defendant's business in that consumers are likely to believe that Defendant's services are legitimately connected to, sponsored or approved by Plaintiff in violation of Illinois common law.

53. By reason of Defendant's acts, Plaintiff has suffered and will continue to suffer damage and injury to its business, reputation and goodwill, and will sustain losses not yet calculated.

54. Unless enjoined, Defendant's acts will cause Plaintiff continuing irreparable harm for which there is no adequate remedy at law.

55. Defendant's actions were committed, and continue to be committed, in willful and wanton disregard of Plaintiff's rights in the FT Marks, entitling Plaintiff to an award of punitive damages.

### COUNT V
### (ILLINOIS COMMON LAW UNFAIR COMPETITION)

56. Plaintiff incorporates the allegations of ¶¶ 1 – 55 by reference as if fully set forth herein.

57. Defendant has engaged in, and continues to engage in, conduct which is contrary to honest, industrial and commercial practice. Defendant's acts are calculated to procure an unfair competitive advantage by misappropriating the valuable goodwill and intellectual property developed by Plaintiff at substantial effort and expense.

58. Defendant's conduct is and continues to be unlawful, and constitutes unfair competition in violation of the common law of the state of Illinois.

59. By reason of Defendant's acts, Plaintiff has suffered and will continue to suffer damage and injury to its business, reputation and goodwill, and will sustain losses not yet calculated.

60. Unless enjoined, Defendant's acts will cause Plaintiff continuing irreparable harm for which there is no adequate remedy at law.

### COUNT VI
### (DECEPTIVE TRADE PRACTICES UNDER ILLINOIS LAW)

61. Plaintiff incorporates the allegations of ¶¶ 1 – 60 by reference as if fully set forth herein.

62. Defendant's unauthorized use of the FinTank Marks has caused and will continue to cause confusion, mistake or deception as to the sponsorship, affiliation or source of

Defendant's services in that consumers are likely to believe that Defendant's services are legitimately connected to, sponsored or approved by Plaintiff.

63. The aforementioned acts of Defendant constitute deceptive acts and practices in violation of deceptive trade practices in violation of 815 Ill. Comp. Stat. 510/2, and have caused and will continue to cause injury to Plaintiff and to consumers.

64. By reason of Defendant's acts, Plaintiff has suffered and will continue to suffer damage and injury to its business, reputation, and goodwill, and will sustain losses not yet calculated.

65. Unless enjoined, Defendant's acts will cause Plaintiff continuing irreparable harm for which there is no adequate remedy at law.

## COUNT VII
## INJURY TO BUSINESS REPUTATION & DILUTION UNDER ILLINOIS LAW

66. Plaintiff incorporates the allegations of ¶¶ 1 – 65 by reference as if fully set forth herein.

67. Plaintiff's FT Marks were famous and distinctive in the state of Illinois prior to Defendant's use of the FinTank Marks.

68. Defendant's use of the FinTank Marks injures and will continue to injure Plaintiff's business reputation and substantial goodwill it enjoys in the state of Illinois.

69. Defendant's use of the FinTank Marks impairs, diminishes and trades on Plaintiff's FT Marks.

70. Defendant's conduct injures, or intends to injure, Plaintiff's reputation, as well as the famous and distinctive qualities of Plaintiff's FT Marks.

71. Defendant's unlawful conduct has been willful and deliberate, designed specifically to exploit the goodwill associated with Plaintiff's FT Marks.

72. Defendant's conduct was and continues to be unlawful, and constitutes injury to business reputation and dilution of a federally registered and common law mark in violation of Illinois Trademark Registration and Protection Act, 765 Ill. Comp. Stat. 1036/65.

73. By reason of Defendant's acts, Plaintiff has suffered and will continue to suffer damage and injury to its business, reputation and goodwill, and will sustain losses not yet calculated.

74. Unless enjoined, Defendant's acts will cause Plaintiff continuing irreparable harm for which there is no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendant as follows:

a. Judgment entered in favor of Plaintiff and against Defendant as to each of the above Counts;

b. Defendant shall pay damages incurred by Plaintiff as a result of the unlawful acts perpetrated by Defendant;

c. Defendant shall pay over to Plaintiff three times all damages incurred by Plaintiff that are recoverable by law as a result of Defendant's trademark infringement and unfair competition described herein.

d. Defendant, and any officers, directors, agents, servants, employees, representatives, successors, assigns, attorneys, licensees, distributors and all persons in active concert or participation with Defendant, shall be enjoined from directly or indirectly:

    i. using the  mark, the "FT" abbreviation, or using any mark confusingly similar to the FT Marks, alone or in combination with other words, as a trademark, service mark, domain name, or trade name to identify, market, distribute, advertise, promote, offer for sale or provide any goods or services;

    ii. otherwise infringing the FT Marks;

    iii. continuing acts of false designation of origin, or doing any acts that may cause Defendant's goods and services to be mistaken for, confused with, or passed off as Plaintiff's goods and services;

    iv. applying for or attempting to register with any governmental entity, including but not limited to the United States Patent and Trademark Office or the state of Illinois, any trademark or service mark consisting in whole or in part of the FT marks;

e. Defendant shall be directed to file with this Court and to serve on Plaintiff, within ten (10) days after issuance of an injunction, a report in writing, under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction;

f. Defendant shall be required to remove the  mark, any "FT" abbreviation and any mark confusingly similar to the FT Marks from Defendant's webpages(s), all social media platforms, social media handles, HTML code,

      search engine query terms, email addresses, and any other electronic communication hosts, links and/or devices;

g. Defendant shall be ordered to pay attorneys' fees and costs of this action reasonably incurred by Plaintiff in connection with Defendant's willful acts of trademark infringement and unfair competition of origin pursuant to 15 U.S.C. § 1117 and otherwise; and

h. The Court order such other and further relief as this Court deems just and proper.

Dated: June 24, 2020

Respectfully submitted,

BLANK ROME LLP

By: *s/ William J. Dorsey*

William J. Dorsey
BLANK ROME LLP
444 West Lake Street, Suite 1650
Chicago, IL 60606
(312) 776-2512
wdorsey@blankrome.com

*Attorneys for Plaintiff The Financial Times Limited*